PASSAIC NAT. BANK et al. v. COMMERCIAL NAT. BANK et al.

(Court of Appeals of District of Columbia. Submitted October 13, 1919.
Decided November 3, 1919.)

No. 3241.

CANCELLATION OF INSTRUMENTS ⬤⟞15—ADEQUATE REMEDY AT LAW FOR MISREPRESENTATIONS TO PURCHASERS OF SECURITIES.

In view of Judicial Code, § 267 (Comp. St. § 1244), prohibiting equitable suits where legal remedy is adequate, a suit in equity to rescind the purchase of securities and recover the consideration paid cannot be maintained against defendants, who were not the vendors, but were alleged to have made false representations regarding the value of the securities, since a damage action at law would afford adequate remedy for any false representations made by them, and they could not respond to a decree of rescission.

Appeal from the Supreme Court of the District of Columbia.

Bill by the Passaic National Bank, the Rutherford National Bank, the Savings Investment & Trust Company, and others against the Commercial National Bank, Tucker K. Sands, and others. From a decree dismissing the bill as to the named defendants, plaintiffs appeal. Affirmed.

C. F. Carusi and Hayden Johnson, both of Washington, D. C., for appellants.

Thos. C. Bradley, W. H. Ellis, C. B. Ellis, and A. H. Ferguson, all of Washington, D. C., for appellees.

VAN ORSDEL, Associate Justice. Appellants, plaintiffs below, filed a bill in equity in the Supreme Court of the District of Columbia,

⬤⟞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

seeking a rescission of the purchase of certain securities, amounting to $95,000 and a money decree for the amount invested therein, with interest and costs. The facts, as alleged in the bill, are substantially as follows:

In 1910 a firm known as F. Mertens' Sons were the owners of a large amount of mountain lands in the state of Maryland, from which timber had been cut. This firm conceived the idea of converting the land into a vast orchard scheme. To this end it was subdivided into 10-acre tracts. The United States Trust Company, of Washington, was selected as trustee to hold title to the property and to act as the agency through which payments were to be made by purchasers of these orchard tracts. Under his contract, the purchaser agreed to pay a stated cash payment, usually 10 per cent. of the purchase price, with notes maturing from month to month for the balance, payable to the trust company as trustee, and when the purchase price had been paid in full, usually in 5 years, the purchaser was to receive a conveyance from the trust company for a commercial orchard. In other words, the promoters agreed to plant the land in fruit trees, cultivate the same, and, according to the prospectus, turn over to the purchaser a bearing orchard at the time of the passing of title.

Large numbers of persons purchased these 10-acre tracts at prices averaging about $2,000, in some instances paying as high as $2,500. The deferred purchase-money notes were indorsed by the trust company without recourse, and turned over to Mertens' Sons, who redelivered large numbers of them to the trust company as collateral security for sums of money advanced to the firm from time to time.

In July, 1914, the United States Trust Company went into the hands of a receiver, and defendant Tucker K. Sands was appointed receiver. The defendant Continental Trust Company was then substituted as trustee, and took over the trust from the United States Trust Company, paying $145,000, the amount of the indebtedness due from Mertens' Sons, receiving the collateral in the form of thousands of tract-purchase deferred payment notes, took over the title to the real estate, and proceeded to execute the trust in substantially the same terms as it had been carried on by the United States Trust Company. With the receivership and the transfer of the affairs to the Continental Trust Company, defendants Bates Warren and Charles W. Warden, who had been prominently connected with the affairs of the United States Trust Company, became officers and directors of the Continental Trust Company.

In the early part of 1916, the indebtedness of F. Mertens' Sons to the Continental Trust Company was about $250,000, and it was also largely indebted to the defendant Commercial National Bank. By this time the sale of orchard tracts had almost ceased, and Mertens' Sons had become hopelessly insolvent. They had borrowed large sums of money from many banks and trust companies throughout the country, largely based upon the commercial paper which had been indorsed over to them by the United States Trust Company, and later by its successor as trustee, the Continental Trust Company. In March, 1916, the Continental Trust Company, acting through Bates Warren, its vice

president, the Commercial National Bank, acting through Tucker K. Sands, its vice president, and the firm of F. Mertens' Sons, acting through Frederick Mertens, one of its members, conceived a plan, the object of which was the reduction of the indebtedness of Mertens' Sons to the two defendant banks, as well as the averting of the financial crisis in the affairs of Mertens' Sons, which would result in the destruction of the collateral represented by the tract purchasers' notes. The plan conceived was to raise $1,000,000 on securities on 398 tracts of land, worth not more than $27,400. The 398 tracts were conveyed to the Continental Trust Company by Frederick Mertens and John Mitchell, Jr., who was a partner with Mertens in the apple orchard project. The deeds on their faces purported to convey 500 tracts. The 102 tracts additional attempted to be conveyed were not owned by either Frederick Mertens or John Mitchell, Jr., nor have they ever had any interest in said tracts.

In carrying out this scheme, on the 11th of March, 1916, the Green Ridge Valley Orchards Company was incorporated, with a capital stock of $500,000, divided into shares of the par value of $100 each, by Bates Warren, vice president of the Continental Trust Company, Tucker K. Sands, vice president of the Commercial National Bank, Frederick Mertens, Otto G. Raymond, and Gardner L. Boothe. At a meeting of the incorporators held on March 16, 1916, at 10 o'clock a. m., in Alexandria, Va., a proposition was submitted on behalf of Frederick Mertens and John Mitchell, Jr., as follows:

"To sell to the said company, to enable it to carry out the objects for which it was incorporated, the said 500 orchard tracts for $500,000 of the fully paid and nonassessable stock of this corporation and for a note of this company for the sum of $500,000, payable on demand."

The minutes of the meeting further stated:

"Whereas, the incorporators believe the aforementioned offer to be a reasonable one, and the price for said property to be fair and reasonable: Now, therefore, be it resolved that the directors of this company be, and they are hereby, authorized to acquire from the said Frederick Mertens and John Mitchell, Jr., or their assigns, at a price not in excess of that mentioned, the aforesaid 500 orchard tracts."

On the same day, at 5:30 p. m., the directors of the Green Valley Orchards Company held a meeting in the Commercial National Bank Building, Washington, D. C., and accepted the proposition of Mertens and Mitchell by a resolution which recited that each tract contained approximately 10 acres and each tract was about one-half planted in apple trees in good condition.

Pursuant to the prearranged plan, the Continental Trust Company conveyed the 500 tracts of land to the Green Ridge Valley Orchards Company, by deed in which the trust company covenanted that the property was unincumbered. Upon 398 of the tracts conveyed, however, there existed prior mortgages and liens, and the title to the remaining 102 tracts was not owned by Mertens and Mitchell. None of the property conveyed, except about 150 tracts, was under cultivation and planted with apple trees.

It is further averred that on the 17th day of March, the day following the meetings at Alexandria and the Commercial National Bank, another meeting of the stockholders was held at the principal office in Alexandria, Va., and the following resolution adopted:

"Be it resolved, that the Green Ridge Valley Orchards Company, Incorporated, shall issue in the manner provided by law $500,000 of first-mortgage coupon bonds, bearing date on the 20th day of March, 1916, to be payable on or before five years after date, with interest thereon at the rate of 6 per cent. per annum, payable semiannually, said bonds to be secured by mortgage or deed of trust on all the property of the Green Ridge Valley Orchards Company, Incorporated, said mortgage or deed of trust to be substantially in the form submitted and read at this meeting."

Immediately following this meeting, John Mitchell, Jr., proceeded to New York and attempted to interest plaintiffs McBee, Jones & Co. in an effort to market the bonds. He was informed by McBee, Jones & Co. that conditions were unfavorable for the marketing of bonds of that character, but were favorable to the marketing of short-term notes well collateraled. Accordingly, on April 18, 1916, the stockholders, who were, in fact, the directors, of the Green Ridge Valley Orchards Company, held a meeting at the office of the corporation, and adopted the following resolution:

"Whereas, it is deemed for the best interests of the company that the company issue and sell its collateral trust notes for the aggregate principal amount of $100,000, due in four, six, eight, and twelve months, and that said notes be secured by a pledge of $120,000, face amount, of the company's first mortgage 6 per cent. five-year gold bonds in a form of collateral trust agreement to be executed between this company and the Empire Trust Company."

In accordance with this resolution, the directors and officers of the company were authorized to and did issue $100,000 collateral trust gold notes of the company, indorsed by Mertens' Sons, pledging as collateral security therefor $120,000 face amount of the mortgage bonds under an agreement between the Green Ridge Company and the Empire Trust Company.

About October 1, 1916, Mertens' Sons being financially embarrassed, organized a corporation known as F. Mertens' Sons Corporation, of which the president was defendant Bates Warren and the treasurer was Charles W. Warden, both vice presidents of the Continental Trust Company. To this corporation Mertens' Sons undertook to convey all their property in trust for their creditors. Shortly thereafter an involuntary petition for bankruptcy was filed against Mertens' Sons, and they were adjudged bankrupt, and the deed of conveyance to the F. Mertens' Sons Corporation was adjudged in the United States District Court for the District of Maryland to be null and void, on the ground that at the time of its execution F. Mertens' Sons were insolvent.

On May 17, 1916, McBee, Jones & Co. telegraphed to F. Mertens' Sons as follows:

"Have Continental Trust and Commercial National wire us to-day what they regard as safe sale value for orchard tracts securing bonds Green Ridge Valley Orchards Co."

To which, on the same day, the Continental Trust Company answered by telegraph as follows:

"Replying to your inquiry respecting value of individual orchard tracts planted to growing apple trees on Green Ridge Valley Orchards and securing their five year six per cent. bonds, we think eighteen hundred to two thousand dollars a conservative valuation. The tracts are being well cared for and growing in value."

On the same day a letter was sent from the Commercial National Bank, signed by Tucker K. Sands, cashier, as follows:

"Answering your inquiry as to my opinion of the sale value of orchard tracts owned by Green Ridge Orchards Company and covered by bonds, I should estimate that the valuation of $2,000 for each 10-acre tract would be a fair valuation. I understand that previous sales of the tracts was at $2,500."

Upon receipt of this information, McBee, Jones & Co. sold and delivered in various amounts to the plaintiffs in this action $95,000 of the face value of the short time notes. Out of the proceeds of sales of said notes, $33,750 were remitted for the account of the Continental Trust Company, $9,000 to the Continental Trust Company for the account of Mertens' Sons, and, at the request of Mertens' Sons, $45,000 of the unsold notes were exchanged for $45,000 worth of the bonds of the Midland Railway Company, which bonds were forwarded to the Continental Trust Company for the account of Mertens' Sons, and were held by the Continental Trust Company and the Commercial National Bank as security for loans made by them to Mertens' Sons. It is alleged at length in the bill that the Continental Trust Company and the Commercial National Bank knew, or were chargeable in law with knowledge, of these various transactions.

Mertens' Sons, on the 28th day of March, 1917, were adjudged bankrupt, and the estates of the firm and the individual members thereof are being administered by a trustee in bankruptcy. It is alleged that from the best information obtainable the bankrupts' estates will pay to the creditors a dividend of not exceeding 5 per cent. on their claims. In June, 1917, by the voluntary action of the stockholders, officers, and directors, the Green Ridge Valley Orchards Company was adjudged a bankrupt, and its only asset consists of the 398 tracts of land, of a value of $27,400, incumbered by the mortgage given to the Continental Trust Company as trustee, to secure the issue of the $500,000 in bonds, which are held, with the exception of the $120,000 face value on deposit with the Empire Trust Company, as collateral security by creditors of Mertens' Sons for various obligations to them.

In the bill it is prayed:

"That the contract of sale and purchase of the gold notes in the bill mentioned be rescinded, for the reasons in the bill set forth, and that the plaintiffs, upon the return to the defendants of the notes held by the plaintiffs, recover of the defendants the money and securities parted with to the defendants in the proportion in which the plaintiffs respectively are entitled, together with interest and costs, and for such other and further relief as may be equitable and just."

The defendant Tucker K. Sands moved to dismiss the bill of complaint on the ground, among others:

"That the bill does not state such a case as entitles the plaintiffs to any relief against this defendant, because they have a plain, adequate, and complete remedy at law."

The defendant Commercial National Bank also moved to dismiss the bill on the ground that—

"Said bill of complaint is bad in substance, and does not contain allegations of fact such as would, if true, entitle the plaintiffs, as against this defendant, to relief in this court."

On hearing, the motion to dismiss as to these defendants was sustained, from which decree the case comes here on appeal.

The court below dismissed the bill as to defendants Sands and the Commercial National Bank on the ground that plaintiffs, as against these defendants, have a plain, adequate, and complete remedy at law. The Judicial Code of the United States (section 267 [Comp. St. § 1244]) provides that—

"Suits in equity shall not be sustained in any court of the United States in any case where a plain, adequate, and complete remedy may be had at law."

The case here attempted to be made against these defendants is based upon the alleged false representations of defendant Sands in his communication of May 17, 1916, to the brokers, McBee, Jones & Co., as to the value of the orchard tracts. As the result of these representations, plaintiffs were induced among other things, to exchange the $45,-000 of railroad bonds for a portion of the notes. By the averments of the bill, a portion of the railroad bonds was turned over to the Commercial National Bank as security for an indebtedness of Mertens' Sons to the bank. The only ground for equitable jurisdiction is found in the prayer for rescission. It is clear that only the vendor, the Green Ridge Company, the maker of the notes, and Mertens' Sons, the indorsers, through whom they came into the hands of the brokers for sale, could be compelled by equitable process to rescind. Defendants Sands and the Commercial Bank are not vendors nor indorsers of the notes.

The rule as to equitable jurisdiction in cases of this sort is clearly stated by Judge Lurton in Hindman v. First National Bank of Louisville, 112 Fed. 931, 50 C. C. A. 623, 57 L. R. A. 108, as follows:

"One who has been induced by false representations to buy property has open to him no less than three remedies. He may rescind and sue at law for the consideration, he may bring an equitable suit for rescission and obtain full relief, or he may retain what he has received and bring his action for fraud and deceit. The first two kinds of relief lie, as is most evident, only against the vendor. The third will lie against either the vendor or any third person through whose false representations, directly made, the plaintiff has sustained damages."

Defendants, not being parties to the contract resulting in the sale of the notes, clearly are not in position to respond to a decree requiring rescission, and Mertens' Sons and the Green Ridge Valley Orchards Company, the only persons against whom the action for rescission would lie, are not made parties defendant. If they were before the

court, and rescission could be had, defendant Commercial National Bank, if liable, a point not here decided, could be retained as a defendant to respond to the extent of turning over the railroad bonds as prayed for in the bill, as one of the results to be obtained from rescission. It is clear that the inability of the plaintiffs to obtain rescission through lack of proper parties defendant, deprives plaintiffs of any means of requiring the bank to respond by turning over the bonds. Hence, so far as defendants Sands and the Commercial National Bank are concerned, the only liability left would be that growing out of the alleged false representations as to the value of the orchard tracts, which, it is averred, induced plaintiffs to invest in the notes. For this there is an adequate remedy at law by an action sounding in tort for damages for deceit.

The decree is affirmed, with costs.

Affirmed.